We will now hear argument in the case of Hernandez-Gomez v. United States. Mr. Ringwine, is that the way I say it? Is that correct? Yes, Your Honor. Very well. And you're representing the appellate and Mr. Hawley for the government. Okay. Please proceed, Mr. Federal. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, I'm Matt Springmeier for the appellant in this case. This case is about a young woman who was tricked into smuggling drugs when she believed that she was bringing cash back from the United States into Mexico. The two issues that are present in this case are whether or not the sentence that the judge imposed was substantively reasonable and whether or not the Court should have allowed Ms. Hernandez to withdraw her plea. Beginning with the first issue as to reasonableness in this case, Your Honor, we would argue that the Court failed to provide a rational and meaningful consideration of the factors in the case. Counselor, I'm a little puzzled by this one. You talk about the rejects, and we have these different kinds of pleas, but the reality is, as I look at this, your client got everything she bargained for in the plea agreement. What am I missing? Your Honor, the Court enhanced the sentence beyond what the parties had agreed to, and as the judge had mentioned, there are supposed to be no corrections. But it was open in the plea agreement, right? She knew that? Yes, Your Honor, as she understood that the exposure could be higher. Exactly, and the judge independently found, looking at the record, I know you refer to your client basically as an innocent person. He found that, in fact, there was over 70 pounds of meth in her car. She had a chain-ease story regarding how she acquired the car. The car was registered in her name. She had frequent trips across the border. An FDA agent stopped her. She deleted her Facebook messages, and on and on and on. So I'm not sure that your client, certainly by the District Court, was viewed as this innocent person. He took the plea agreement, gave her, from my perspective, everything that she had bargained for. There was an opening, and he could do more, and he looked at what had happened there and said, no, she needs more. But it was still within guidelines. What am I missing? Your Honor, I believe that the Court failed to properly consider some of the explanations that were provided to some of the conduct that the Court relied on in deciding that the sentence needed to be higher than the bargain agreement. It didn't write this down or didn't consider them? It didn't properly consider them, Your Honor. For example, the Facebook messages. In this case, the AUSA, during sentencing, had explained that we were talking about a Facebook ad that was deleted. And when we're talking about a Facebook ad that's deleted, this would be the person that posted it, which would have been the individual that Ms. Hernandez-Gomez had contacted. And so she didn't affirmatively delete those messages. They were deleted, and she could no longer access them. The messages that she maintained were the ones that were on her cell phone, which she provided to agents and did so willingly at the port of entry. Well, she asserted that she knew that she had drugs. Correct? I'm sorry, Your Honor. She admitted that she had knowledge of the drugs. Now she denies it after the fact. Your Honor, I believe the record would show that Ms. Hernandez-Gomez had been consistent in her denials of knowledge of the drugs. She specifically admitted it? I don't believe so, Your Honor. She had consistently said that she didn't know that there was any drugs in the vehicle, both at the port of entry and throughout the process. The only time that the court concluded that she had knowledge of that was when they had agreed to the Uncharged Conduct Enhancement. And the court assumed, based on that, that there was a clear inconsistency. She agreed with that. She agreed with the 15 level. She agreed with everything. Yes, Your Honor. Now we can say she changed her mind. But as we said in New Mexico, a card laid is a card played. Yes, Your Honor. I thought it was the same. I'm sorry, Your Honor. I'm sorry, I missed that last part, Your Honor. Was that a question? He said a New Mexico thing, which is a card laid is a card played. Oh, yes. Let's see the top of that one. I don't think I could, Your Honor. But here, what has been consistent, what the AUSA had explained was that she didn't know where the drugs came from or how they got in the car. Specifically, that's what the AUSA said, that they didn't anticipate an explanation for how they got in the car in the profit letter. Didn't anticipate how she said she got the car either. Was it lent? Was it sold? Was it bought? Was it paid for? I mean, there were so many inconsistencies, but she did in her plea agreement admit to these various things. Now she's changing her mind. And, Your Honor, she did admit that the vehicle was lent to her, and that's what Mr. Pachter had explained. That was just part of her admission. Then she said she bought it, and then she said it was given to her. There were a number of things that were inconsistent with what she's now suggesting. Well, Your Honor, I think it's important to understand the progression there. I apologize. I didn't mean to cut you off. Well, are you saying that we should ignore the plea agreement? No, Your Honor. But I think it needs to be viewed in context. And as it relates, it's not correct. Well, Your Honor, I believe that the court should have considered these explanations and followed the party's recommendations. And that it didn't follow the rationale. The whole purpose of a B agreement is that the court doesn't have to follow the recommendations. And this is not an A agreement. And, Your Honor, as it relates to the purchase of the vehicle here, the progression of events would be important, too, because she initially told agents that she had purchased it, and then second said that she had received money to purchase it, but ultimately admitted that it was lent to her. And that's what she confirmed in sentencing as well. And she had been consistent from that point forward that she had actually been lent the vehicle almost as if it was a company vehicle. And so she wouldn't have had an occasion to believe that there was any drugs in the vehicle as well. And why did she agree to the 15-level increase? Your Honor, I believe it was a bargain with the government because of the issues in the case related to knowledge so that they could reach an agreement without the risk of trial. And so she was not, in essence, agreeing that she had specific knowledge of the drugs because of that, but that she was agreeing that there would be issues that would be warranted to avoid the risk of trial. I get back to what I started with, and hopefully you can help me. As I look at the plea bargain, plea agreement, I think she got everything she bargained for. And I think you agreed that she did. The only thing that happened here, the judge used the word about he rejected something. But, of course, I'm not sure what he rejected. It's probably a slip of the tongue because she got what she bargained for. Now, there was an opening for the judge to decide other things, and she knew that. I'm struggling for what was done wrong here. In what way had she harmed? She got what she bargained for. What am I missing? Your Honor, I believe the harm would be when the sentence was above what the parties had recommended. Okay. She knew, I believe, that it was just a recommendation. It did not bind the court, and certainly not this court, because, as you know, this particular judge takes a pretty firm view about that. He's been upheld, sometimes not, but many times he's been upheld doing exactly what he did here. Yes, Your Honor. And if I could switch to the second issue, Your Honor, because of the limit of time here. Okay. We would argue here that while the court did decide U.S. v. Montoya recently, that we would argue that this case would be different. Here the court took it a step further by rather than merely rejecting the case, they had also noted that it is a charge-bargaining case, which is the exact type that Type A is. Additionally, at the end of the sentencing, the government dismissed the charge, which would be in essence the same as a Type A agreement. And so everything about this looks like and acts like a Type A agreement outside of the language in the plea itself, claiming it to be a Type B. Even if it were a Type A case, do you get to withdraw your plea if the judge doesn't in any way reject or disagree with the features that make it a Type A case? The judge didn't reject the dismissal of the drug charge. We would argue that it does, Your Honor, because it's not what the defendant had anticipated. And so because of that, she should have been informed of her rights, of the fact that she does have the ability to withdraw that plea. And because the court didn't give her that option, then it failed to follow that procedural requirement. The defendant said that that was not part of the plea agreement. It was a B agreement and it was clear from the face of the plea agreement that that was the situation. So we can't just change it into an A because she didn't like the result. She was given a break and then she was permitted to appeal. Your Honor, I see I've ran out of time. If there's any other questions, I'm happy to answer Judge Kelly's question. Thank you, Your Honor. And here I would argue that merely calling it a Type B does not make it a Type B. You know, oftentimes in contracts, people try to name things differently than how they are actually working procedurally and in effect. And here, in effect, it was a Type A agreement. Very well. All right, thank you. So let's hear from the government. Good morning, may it please the Court. Benjamin Hawley for the United States. Picking up on that last point, the Rule 11 is specifically tied to what the plea agreement specifies, Rule 11C1. The plea agreement says there will be a 15-level enhancement for what's called dismissed slash uncharged conduct. Right. Now, the conduct was not uncharged because there was still a pending information that contained the drug count. An indictment or an information, it's not like a civil complaint that it supersedes and displaces all the priors. Each one of them collects them, so they're all still pending. Right. So it wasn't uncharged. So it must have been dismissed. So it, in that sense, reflects an agreement. And certainly your behavior, the government's behavior at this sentencing, reflects the agreement that that charge would be dismissed. So you had an A agreement, but you basically concealed it from the judge. Maybe you thought the judge wouldn't go for an A agreement, but this looks like an A agreement. I don't know how it is. Dismissed conduct, unless there's an agreement, it will be dismissed, which it was. So two responses. The first is that we were not trying to conceal the type of agreement from the judge. I mean, obviously it's almost. There's no agreement between the parties that that original information would be dismissed as it was right away. No, and I think the reason for that is that that's expected. There doesn't need to be an agreement because that's what's going to happen, assuming the sentencing goes through as it normally would. The reason that initial charge kind of continues on in the background is because there's a breach provision in the plea agreement that talks about if the defendant, between the guilty plea and sentencing, for example, commits a new crime or as sentencing tries to back away from everything or breaches in some other way, then the government can potentially bring back that initial charge. So that's why that is covered there. Referring to it as dismissed conduct is basically an acknowledgement that it is going to be dismissed, which seems to make it look like an A agreement. So I think that that language comes from the 5K provisions in the guidelines about why there can be certain departures, dismissed or uncharged conduct. But again, the agreement, and if the defense had wanted this or if the parties wanted to include that specific language, they certainly could have. But here there's no language that in exchange for a guilty plea to this, the government will dismiss that. That normally comes up, for example, in a three-count indictment where you have in exchange for a plea to count three, government will dismiss counts one and two. That type of language, that's what type A plea agreements are, and that's what the committee notes to the rules. I'm talking about using that as an example. But suppose you have a three-count indictment and they plead guilty to count three, and then the plea agreement refers to counts one and two as dismissed, last uncharged, and has an adjustment. It says nothing about what will happen at one and two. Everyone knows that that's going to be that one and two are going to be dismissed and that's part of the deal. I suppose so. I still don't think that would make it a type A agreement. And again, to the extent that the labels are controlled and not substance. No, no, I would not as a label. Subsection A or type A says that if the plea agreement says in exchange for the plea that the charge will be dismissed. So I guess we're just disagreeing on if this is specifically or expressly putting it under type A. So the government's position is this must be expressly in the agreement. If it's going to be an A agreement, you've got to say in exchange for X, you're going to get Y. If it doesn't say that, even though the net effect, as my colleague talked about, is that it's not an A agreement from your perspective. Is that correct? It needs to specify. It's the language in the rule. And our argument would be it's not so specified. If your honor disagrees with that, potentially, but that would be our argument is it needs to be specified. And this is something that is common. I mean, plea agreements commonly say we'll dismiss one exchange for a plea to do things of that nature. Does the government agree that if it's a type A agreement and some trivial part of the, you know, of the recommendations that are contained in the plea agreement is rejected by the district court, that that means that they have to be given a right to withdraw the plea? I think the, so I guess it depends on what the triviality is, but the way the rule is written, my understanding is if the court says it rejects a plea agreement that can be rejected, then those various other procedures can follow automatically. I think you would then have a harmlessness potentially argument. And Rule 11H says that, you know, harmlessness is always built into these Rule 11 procedures. So suppose the, that this had been an A. Right. Was there a violation here in not offering the option to withdraw based on the not taking the sentencing recommendation? I think so, but it would be harmless. And the reason for that is because. Why would there be a right to withdraw in that circumstance? Because the power to reject an A plea agreement is that the court isn't going to go along with the charge bargaining. But if the court does go along with the charge bargaining, why would there remain a right to withdraw the plea if the thing that makes it subject to withdrawal is satisfying? So if I'm understanding correctly, you're kind of drawing the distinction between the charge bargaining portion and the sentencing bargaining portion. So if I'm understanding that correctly, it's such that the court might. If you have an A agreement with B features. Right. And the B features are where the district court says, no, I'm not going along with that. Right. That's not really rejecting the plea agreement because the thing that gets you the right to withdraw if the court rejects is the A feature. But he went along with the A feature. He didn't question that. Right. He didn't like it, but he went along with it. Yeah. So I think I understand that. So, yes, in that scenario, then the rejection is the B part where you could even have an A and a C. And you could reject the C but not the A. So in that case, I don't think that there would be a right to withdraw as to the extent you can divide that out as to the A portion. Here there's no practical difference between those because we just have the one count. So even if the plea agreement disappears entirely, it's still the same count. The court can't dismiss the charge bargain in the sense of dismissing the count because everyone agreed that Ms. Hernandez-Gomez had made a knowing, voluntary, intelligent plea, all of those things. So it comes out exactly the same, and she got the benefit of her bargain, which was to cap the district court with no more than that. Not more because she got to bring this deal, which she wasn't entitled to. That's correct. So an extra benefit, as it were. And the government obviously got the certainty of conviction, which was part of what we were looking for in entering into the plea agreement. I'm happy to address that issue. We're back to the substantive reasonableness. Why don't you go to that then? Okay. Substantive reasonableness. As this court knows, departures and the amount of a departure and whether it should be a departure, it is all wrapped into substantive reasonableness. Can I just ask you one thing? I don't remember a specific claim in the trial court that this was a substantively unreasonable sentence. Did I miss something? No, though defendants don't have to object specifically. Is that if I just find out whether anything was said? No, beyond just implicitly the parties were arguing for lesser sentences than 60 months. So only in that regard. Okay. And to the extent the argument is one of explanation, that would be a procedural issue, which I don't think was fully presented in either way. The court went to great lengths to explain its rationale. If you have any further questions, I'm happy to answer, but otherwise we would submit. I don't think so. Okay. Thank you. Counsel, you've used up all your time. I'm going to give you a minute of rebuttal since the government didn't use all its time. Thank you, Your Honor. And, Your Honor, as we would argue here, it looks like a duck, it croaks like a duck, and it acts like a duck. And it is, in essence, a type A agreement substantively, and the court should view it as such. And we would ask that the court reverse the decision because Ms. Hernandez-Gomez was given the opportunity to withdraw her plea. And with that, Your Honor, we would submit unless there's any other questions. Would you disagree with Judge Kelly's comment that a card laid is a card played? I think it's a great statement, Your Honor. I wouldn't necessarily disagree with that. Okay. Very well. Thanks to both counsel for your argument. The case is submitted.
judges: Kelly, SMITH, COLLINS